FILED
2008 Oct-15 PM 03:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| SHARLOTTE D. HINES, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] 5:07-CV-2140-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.  Introduction.

The Plaintiff, Sharlotte D. Hines, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Ms. Hines timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Hines was forty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a tenth grade education and no GED

or other formal education.  (Tr. at 22-23, 284.)  Her past work experiences include employment as a poultry worker, housekeeper, and fast food worker. *Id*. at 122.  Ms. Hines claims that she became disabled on February 11, 2005, due to back and leg pain, high blood pressure, sinus problems, peptic ulcers, blood problems, degenerative disc disease, obesity, and borderline intellectual functioning.  *Id*. at 34, 19.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's

impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id*. If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id*. If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id*. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the

claimant is not disabled. *Id.*2

Applying the sequential evaluation process, the ALJ found that Ms. Hines meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 19.) He further determined that Ms. Hines has not engaged in substantial gainful activity since the alleged onset of her disability. *Id*. According to the ALJ, Plaintiff's degenerative disk disease; high blood pressure; obesity; and borderline intellectual functioning (estimated) are considered "severe" based on the requirements set forth in the regulations. *Id*. However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. *Id*. at 20. The ALJ did not find Ms. Davis's allegations to be totally credible, and he determined that she has the following residual functional capacity: "a full range of medium work with borderline intellectual functioning and no greater than moderate limitation in activities of daily living, in social functioning, and in concentration, persistence, and pace." *Id*. at 21, 20.

According to the ALJ, Ms. Hines does not have any past relevant work, she is a "younger individual," and she has a "limited education," as those

terms are defined by the regulations. *Id*. at 22. He determined that "transferability of job skills is not an issue because the claimant does not have past relevant work." *Id*. The ALJ found that Ms. Hines has the residual functional capacity to perform a full range of medium work. *Id*. at 20. The ALJ used Medical-Vocational Rule 203.25 and the Plaintiff's "residual capacity for the full range of medium work, … the claimant's age, education, and work experience" to find her "not disabled." *Id*. at 22. The ALJ concluded his findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from February 11, 2005 (as amended) through the date of [the] decision." *Id*. at 23.

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny

to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.     Discussion.

Ms. Hines alleges that the ALJ did not base his decision on substantial evidence because he did not properly develop the record and that his decision should, therefore, be reversed and remanded.  Specifically, Plaintiff contends that the ALJ should have ordered an I.Q. test "to determine whether the Plaintiff would . . . meet a mental retardation listing."  (Doc. 8 at 9.)

An ALJ's decision must be based on substantial evidence, meaning "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); citing *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  In making this decision, the ALJ has a duty "to develop a full and fair record."  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  An ALJ has a special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" when the plaintiff is unrepresented and is "unfamiliar with hearing procedures."  *Id.*; quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978) and *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981).  However, despite this duty, the Plaintiff does have the "burden of proving that [she is] under a

disability as defined by the Act." *Ford v. Secretary of Health & Human Services*, 659 F.2d 66, 69 (5th Cir. Unit B 1981).

Furthermore, the ALJ does not have a duty to order a consultative examination unless one "is necessary to enable the [ALJ] to render a decision." *Id.*; citing *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977); *see also Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988) (finding that the ALJ did not have a duty to order a coronary arteriogram to determine if Holladay suffered from ischemic heart disease because the ALJ was able to rely on Holladay's residual functional capacity and the Medical-Vocational Guidelines to determine that she is not disabled). *Contra Ford*, 659 F.2d at 69 (finding that the ALJ did have a duty to order a consultative examination where a social worker found Ford "was emotionally unstable and unable to work due to her mental and physical condition" and where the ALJ did not expressly explain why he denied Ford's "request for a psychiatric examination").

Plaintiff's argument that the ALJ did not base his decision on substantial evidence because he had not fully and fairly developed the record is unconvincing. The ALJ met his duty to develop the record for this Plaintiff, who was represented by a non-attorney at the hearing. At the hearing, this

representative asked Plaintiff about her education history, her family, and her daily activities. (Tr. at 284-294.) The ALJ listened to this exchange, asked a question of the representative, and asked the representative and the vocational expert, Patsy Bramlett, questions about Plaintiff's work history and what jobs Plaintiff could potentially hold in the future. *Id.* at 306-311. These questions were based on Plaintiff's ability to function with moderate restrictions in "daily living, social functioning, and in concentration, persistence, and pace" and at a borderline intellectual level. *Id.* at 309.

Furthermore, the ALJ did not err in failing to order an I.Q. test for Plaintiff because such a test was not necessary for him to render a decision based on substantial evidence. The ALJ already had multiple consultative examinations available for consideration when he made his decision. None of these examinations or the other evidence in the record indicates that Plaintiff might meet the Mental Retardation Listing.

Additionally, Plaintiff does not meet the initial requirement of Listing 12.05: "significantly subaverage general intellectual functioning with deficits in adoptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before

age 22." 20 C.F.R. pt. 404, subpt. P, Appendix 1.  Plaintiff was never found to have "significantly subaverage" intelligence; rather, she was assessed as only mildly mentally retarded by Dr. Haney in 1999 and as functioning at a borderline intellectual level by Dr. Haney in 2005.  (Tr. at 176 and 206.)  Neither of these assessments is as severe as required in Listing 12.05.  Also, the evidence in the record indicates that Plaintiff was not functioning at a significantly subaverage level either before or after she turned 22.  Before Plaintiff turned 22, she attended school until she was in eleventh grade, and she was not in special education.  *Id*. at 203.  During her adult life, Plaintiff has held multiple jobs, and she currently cares for her one year old granddaughter, cooks her own meals, cleans her apartment, reads the newspaper, and watches television.  *Id*. at 292-304.

     Based on this evidence, the ALJ did not need to order an I.Q. test to determine whether Plaintiff is mentally retarded.  A reasonable person would find that a person who nearly completed high school, was not in special education, has held jobs in the past, and who cares for both herself and her young granddaughter is not functioning at a significantly subaverage intellectual level because these types of activities require more than

significantly subaverage intelligence.

Additionally, unlike the plaintiff in *Ford*, Ms. Hines did not request an I.Q. test or additional consultative examination, nor did the doctors who examined her find she was unable to work; rather, Dr. Leonard found in 2005 that she had only moderate mental limitations. (Tr. at 215-231.) Therefore, because the ALJ did fully and fairly develop the record, and because there is substantial evidence supporting his decision denying Plaintiff disability benefits, this Court finds that his decision is due to be affirmed.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Ms. Hines's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 15th day of October 2008.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671